IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARL SPRAGUE, )
 )
Plaintiff, )
 )
v. ) No. 17-cv-1050-DRH-RJD
 )
UNKNOWN RAILROAD COMPANY; )
CITY OF VANDALIA, ILLINOIS; )
MAYOR OF VANDALIA, ILLINOIS; )
and, UNKNOWN DEFENDANTS. )
 )
Defendants.

## AMENDED MOTION FOR THE RECRUITMENT OF COUNSEL

Plaintiff, Carl Sprague, pro-se, hereby amends his previously filed motion for the recruitment of counsel to represent him in the above captioned proceedings, stating the following:

1.  Plaintiff continues to be unable to afford the services of an attorney.

2.  Plaintiff has made reasonable efforts under his circumstances to obtain representation but has been unsuccessful due to denials and impediments. More specifically, after Plaintiff was released from the hospital, he contacted Michael Agruss of the Agruss Lawfirm in Chicago, Illinois, who agreed to take the case. However, Plaintiff was then arrested in Vandalia, Illinois for Criminal Trespass (unrelated to the current lawsuit allegations), and imprisoned in the local county jail. (People v. Carl Sprague, No. _Could not obtain_) While in the custody of the jail (also

1

in the same jurisdiction of various defendants named) Plaintiff repeatedly wrote the lawfirm, but he did not receive a response. After several months Plaintiff's mother obtained the Agruss' Lawfirms phone number and called the firm. He then learned that the firm dropped the case claiming they never heard from the Plaintiff. The only other attorney he knew was his criminal defense attorney Emily Fitch, located at 629 W. St. Clair, P.O. Box 240, Vandalia, Illinois 62471, however, after solicited, she delayed in giving Plaintiff an answer. In the interim, Plaintiff stayed in the county jial for over a year until he pled guilty in turn for 2 years IDOC. Initially, Plaintiff was transferred to NRC, then again to his current parent institution. After arriving, he wrote Ms. Fitch who responded declining to take the case.

3.   Plaintiff also requested for jail officials to assist him in contacting attorneys to represent him, but he was informed that they were unable to help. Plaintiff was not told, nor did he know if a law library was available to locate attorney listings.

4.   Even if Plaintiff had attorney listings, he did not have the funds to write attorneys en mass for help.

5.   Plaintiff does not have a GED, and left high school after the 10th grade. He does not understand how law works, and, it appears like another language in a sense.

6.   As a direct result of the injuries by the Defendants in this action, Plaintiff has concentration, comprehension, and dexterity problems for him to understand and appreciate complicated legalese,

standards, and procedures. This places him at a significant disadvantage against the Defendants who will have multiple seasoned attorneys to represent them.

7. Further investigation of Plaintiff's case is necessary to correctly identify the Defendants, which may even present an initial jurisdictional question for this court before proceeding with the case.

8. Plaintiff received the assistance of another inmate in the drafting of both the amended complaint and this instant motion. Plaintiff has attached a Declaration of Steven P. Hibberd in support of this instant motion.

WHEREFORE, Plaintiff prays this court will recruit an attorney to represent him in this matter.

Respectfully submitted,

*[signature]*
Carl Sprague

## DECLARATION OF STEVEN P. HIBBERD

I, Steven P. Hibberd, hereby declare the following under the penalty of perjury:

1.   I am 41 years old and arrived at Danville Correctional Center in November of 2016.  I have approximately 19 years of self taught legal studies from my time in prison.  My legal studies and litigation experiences cover a broad area including mandamus, releif from judgments, original actions in the Illinois Supreme Court, appellate procedure, and certiorari petitions.  My primary area of study is criminal appellate and state and federal post-conviction procedure, and constitutional and tort law against government bodies.

2.   I obtained my Associates Degree in 2011 while incarcerated, and have on-going credits at the community college level, and through the University of Illinois at Urbana.

3.   I used to frequently help other inmates in their legal matters, however ceased about five years ago.  I have still opted to help others when the heart calls on me to do so, but I am often reluctant.  While I have assisted inmates with getting their claims into court, I have likewise assisted inmates to either solve their problems without litigation, or offered opinions that their claims are meritless to proceed to court.

4.   I met Carl Sprague, the Plaintiff in the case Sprague v. Unknown Railroad Company, et al., No. 17-cv-1050-DRH-RJD in August of 2017 here at the Danville Correctional Center.  I

1

exercise on the yard and gym each day and generally keep to myself. The Receiving Unit attended recreation time with my assigned unit. I began noticing Mr. Sprague, who was in the Receiving Unit, during exercise time. What caught my attention was that he walked by hisself, had a severe limp as he walked, had a twisted leg, and walked only in the standard jumpers that Stateville NRC issues to inmates. My first impression was that he appeared harmless, and, could not possibly be comfortable or wearing healthy footwear for his condition. Without approaching him, I continued to notice Mr. Sprague for approximately 2 weeks, recognizing that he continued to wear the same footwear. I assumed he either did not have money to buy proper footwear, or that no one would give him a better pair of shoes. I then approached him in the gym and offered to give him the Reebok shoes I wore. He appeared surprised and graciously accepted them.

5. The following day, I briefly spoke to Mr. Sprague on the yard, noting he was wearing the shoes. In thanking me, he shared how he got his limp, stating he was hit by a train. At that time, I did not share with Mr. Sprague that I knew law. I am reluctant to do so as a means not to involve myself in other's affairs. Over a period of several days Mr. Sprague would volunteer his frustration over being hit by the train and that he was waiting for an attorney to respond to him. Eventually I began asking questions and discovered that he did not have a lawsuit filed but wanting to file one, yet needed an attorney to do it.

6. I then began asking deeper questions, learning how a firm agreed to take his case on contingency (Agruss Lawfirm) but that they ended representation claiming he stopped communicating; that

he claimed he never stopped writing them because he wrote from the county jail; and, that five months after being struck by the train he was arrested in the City of Vandalia for Criminal Trespass and spent over a year in the county jail.

8. I came to a belief that possibly county jail officials interfered with Mr. Sprague's ability to obtain a lawyer and sue over the injuries sustained. This belief cannot be proved, but what led me to suspect such was 1) Elements of a proposed civil suit would involve trespass, and an unrelated criminal trespass charge after only 5 months of being struck may serve to undermine Mr. Sprague's credibility; 2) The timing of the charges were impeccable; 3) The charges were filed by police in the city of Vandalia- a likely defendant in a proposed civil suit; 4) Criminal Trespass is a relatively low level offense, yet his bond remained high and his case stayed in court for over a year as the statute of limitations acrued. More significant charges often resolve after just a fraction of that time; 5) Mr. Sprague said he wrote the Agruss Lawfirm repeatedly without any return response- contrary to the firm claiming they did not hear from him; and, 6) Jail officials did not assist him in locating other attorneys.

9. Mr. Sprague later informed me that Ms. Fitch responded declining to represent him. At that point, I decided to educate him with how to file his own suit. I did not want to get involved further, particularly because I did not know railroad or tort liability law against private entities. As far as I was concerned I was done involving myself in Mr. Sprague's legal affairs.

10. Then, early October, Mr. Sprague told me that the court could not understand his lawsuit and asked for help. At that time,

3

I decided to research his case before proceeding. In doing so, I learned the extent to which Mr. Sprague had merit, reading cases such as <u>Reid v. Norfolk & Western Railway Company</u>, 157 F.3d 1106 (7th Cir.1998) which were distinguishable, yet similar in circumstances to Mr. Sprague's situation. Accordingly, I assisted Mr. Sprague by drafting an Amended Complaint (after careful communication) for him to more cogently present his claims to the court.

11. My observations of Mr. Sprague is that he is sincere. While he is also personable and polite, he has trouble keeping a consistent thought, and after reading what he initially filed, it did not adhere to the instructions of the Clerk, nor explain his claim in a manner easily to be discerned by a reader. I do not think he is able to educate himself sufficiently to litigate his own claims.

12. Mr. Sprague informed me he leaves prison on October 27, 2017. (See Amended Complaint, ¶ 4) As a result, I will not be in a position to guide or assist Mr. Sprague in further substantive proceedings.

I, Steven P. Hibberd, hereby declare the aforestated to be true under the penalty of perjury.

Executed on: October 18th, 2017.

*Steven P. Hibberd*
Steven P. Hibberd
No. B70027
3820 East Main St.
Danville, Illinois 61834

4