IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARL SPRAGUE, )
)
Plaintiff, )
)
v. ) No. 17-cv-1050-DRH-RJD
)
UNKNOWN RAILROAD COMPANY; )
CITY OF VANDALIA, ILLINOIS; )
MAYOR OF VANDALIA, ILLINOIS; )
and, UNKNOWN DEFENDANTS. )
)
Defendants. )

PLAINTIFF'S FIRST AMENDED COMPLAINT

The Plaintiff, CARL SPRAGUE, through his own person, hereby brings this action against the named Defendants, stating as follows:

I. JURISDICTION AND VENUE

1.  This civil action is authorized under 42 U.S.C. § 1983 to redress the deprivation, under color of law, of the rights secured by the Constitution of the United States. Original jurisdiction is invoked under 28 U.S.C. §§ 1331 and 1343(a)(3), and, this court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear Plaintiff's state law tort claims of negligence.

2.  This court also has jurisdiction over the Plaintiff's request for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-2202.

3.  Venue is appropriate in the Southern District of Illinois under 28 U.S.C. § 1391(b)(2) because the events giving rise to

this complaint occurred in Vandalia, Illinois.

## II. PARTIES

4.  Plaintiff Carl Sprague, at all times relevant to this complaint, was a resident of Illinois. At the filing of this First Amended Complaint the Plaintiff was confined at the Danville Correctional Center. As of October 27, 2017, Plaintiff will be released and reside at 895 E. 1025 Avenue, Shobonier, Illinois 62885.

5.  Defendant Unknown Railroad Company is a company beleived to be located outside of Illinois, and is the owner of a freight train operated by its agents, and is responsible for striking Plaintiff, causing irreparable unjuries. Likewise, said Defendant owned the tracks they operated on, and had a duty to construct, maintain, and operate a warning device system to warn members of the public of dangers from on-coming trains, including permissive tresspassers.

6.  Defendant City of Vandalia, Illinois, is responsible for the construction and maintenance of public thoroughfares, and, the reporting of damaged equipment at the public roads crossing rail tracks in its city limits, both to protect the public from dangers from on-coming trains.

7.  Defendant Mayor of Vandalia, Illinois, is responsible for setting and overseeing policies of the City of Vandalia, Illinois, particularly as to matters of public safety.

8.  Defendant Unknown Defendants are employees of the City of Vandalia, Illinois, and are responsible for the maintenance and

2

[or] observation of public roads at railroad crossings, including the reporting of dangers posed to the public.

9. Each Defendant is sued individually and in the official capacity and at all times acted under color of state law.

## III. FACTS

10. On October 11, 2015, at approximately 3:00am, Plaintiff was in the city of Vandalia, Illinois walking to the Circle K Convenience Store. Circle K was located in a commerce area of Vandalia where the Old State Capital Building, City Parking Lot, City Hall, a bar, Micheal's Feed Store, an apartment building, and other buildings and businesses were located.

11. A railroad track, beleived to be owned by Unknown Railroad Company Defendant, traversed the above described region. Said track ran in a straight line throughout this region, parallel with City Hall, the Parking Lot, and Old State Capital Building. This track, as it pertains to this region, ran through the public crossroads of 6th, 5th, 4th, and 3rd Streets. Circle K is located on 2nd Street.

12. Parallel with the railroad tracks, in between the public crossroad streets, were guardrails on both sides of the track. However, between the guard rails and actual track was a limited area of a beaten path serving exclusively as a path that pedestrians frequently traversed, and, on information, are known to the Unknown Railroad Company and City of Vandalia to be frequently traversed.

13. Plaintiff, who was in his late twenties at the time, was a permissive tresspasser, who walked the beaten path all of his life, and upon information, said path existed and was used prior to his birth. Likewise, Plaintiff has observed other pedestrians walking this path during all hours of the day and night.

14. On October 11, 2017, there were no fences or warning signs posted prohibiting pedestrian use of the beaten path, and the beaten path was otherwise known as a shortcut to the area in question.

15. At the public crossroad of 5th Street a crossing gate existed that is supposed to notify both pedestrian and vehicular traffic of on-coming train traffic. The crossing gate is supposed to alert the public via loud "ding" sounds and flashing lights, and if working, can be observed and heard for several blocks in both directions. However, on the night of October 11, 2017, Plaintiff did not hear nor observe the crossing gate activate.

16. Other than a crossing gate, the only other way for pedestrians and vehicular traffic to become aware of on-coming train traffic is observing it, and, hearing the train blow its whistle. On October 11, 2017, Plaintiff did not hear a train blow it's whistle, and, did not observe a train on the tracks.

17. On the date and approximate time previously identified, Plaintiff entered the beaten path area near the aforementioned crossing gate and walked toward the 4th Street crossroad.

18.   After crossing the 4th Street crossraod, suddenly and without warning, Plaintiff turned to observe a train operated by the Unknown Railroad Company Defendant coming toward him. In a panic, Plaintiff immediately tried to escape but could not due to the guardrail walls. At that time, Plaintiff was struck by the train, and instantly blacked out.

19.   On information, prior train accidents have occurred in the region subject of this complaint at the public crossraods within 3 years prior to Plaintiff being struck by the train

20.   Because of this beaten path's existence, it's location close to a commerce area, straightaway view parallel to the track, the frequency of pedestrian traffic, and that the area was prone to accidents in the past, agent train operators of the Unknown Railroad Company knew, or should have known of the existence of pedestrians in the region, including Plaintiff, on the date and time when Plaintiff was struck.

21.   Because the Unknown Railroad Company Defendant operated though the City of Vandalia, the company knew, or should have known of a defective and otherwise inoperable warning device system in the region. On information discovered after being struck, the warning device system near where Plaintiff was struck in fact was inoperable.

22.   Because public roads crossed the train tracks in question, that a known pedestrian path existed and was frequently used for years, and, that the area in question was prone to accidents in past, the City of Vandalia knew, or should have known of the existence of a defective and inoperable warning device system and

the dangers posed to the public sufficient to report the defective equipment to the Unknown Railroad Company, or otherwise take steps to protect the public until said equipment was reparied. On information, the City of Vandalia did neither to protect the public.

23. On information, in April of 2016, the Unknown Railroad Company and the City of Vandalia repaired and [or] replaced the previously inoperable warning device system at the 5th Street crossroad, and, posted up warning signs to pedestrian traffic. (Plaintiff has attached a hand-drawn reference map of the region)

24. After Plaintiff was struck by the train, he woke up one week later at Barnes Jewish Hospital in St. Louis. As a direct and proximate result of being struck, Plaintiff underwent 43 hours of initial surgeries by 3 doctors to save his life and repair catastrophic injuries throughout his body as described in the following paragraphs.

25. Direct physical injuries consisted of:
    a) a fractured skull with severe brain trauma;
    b) a broken neck with damaged vertebre;
    c) a broken back;
    d) both hands were crushed and mangled;
    e) a broken right leg;
    f) a broken right knee;
    g) severe skin trauma;
    h) a near severed left arm.

26. As part of the surgeries Plaintiff had to endure, he had staples placed into his fractured skull; his neck vertebre were

damaged and doctors had to enter from the front of his neck to install a cadavor bone to hold his vertebre together; six pins were installed in his crushed left hand; eight or nine pins were installed in his crushed right hand; skin grafts took place to repair skin damage on his hands; four screws were installed in his vertebre in his back; screws were installed in his right leg; and, his right knee had to reconstructed.

27. Plaintiff stayed in a hospital bed for weeks, and still had to endure numerous follow-up corrective surgeries. During this time he was completely immobile due to being wrapped in numerous casts, with intense physical pain.

28. Derivative permanent physical effects Plaintiff sustained from the injuries include:
    a) migraine headaches;
    b) loud ringing noises in his ears;
    c) intense debilitating back pain;
    d) limited movement in his neck;
    e) both hands often cramp up when performing routine tasks;
    f) twitches from nerve damage;
    g) severe scarring throughout his body at the surgical points of entry, including large portions of his hands;
    h) an altered right leg, causing permanent limping.

29. Further derivative effects of the injuries Plaintiff sustained include:
    a) severe anxiety;
    b) an inability to sleep throughout the night;

c) horrific and reoccurring dreams of being operated on while being able to feel pain from the surgeries;
d) difficulty engaging in sustained reading due to concentration issues;
e) difficulty watching t.v. due to flickering light;
f) impaired memory;
g) emotional mood swings;
h) difficulty maintaining sustained conversations with people due to concentration issues;
i) pain when standing causing reduced time standing;
j) inability to lift moderate loads of weight while engaging in otherwise everyday mundane tasks.

30. Plaintiff was a roofer prior to his injuries. Due to the injuries received, Plaintiff is unable to perform this job, which required standing for long periods of time, standing on angled planes, climbing a ladder, and carry heavy bundles of shingles up a ladder.

31. Plaintiff was also an advid guitarist and artist prior to his injuries received. Plaintiff is now unable to play the guitar, or otherwise have the dexterity required to both play and draw to continue these hobbies.

32. As a direct and proximate result of the injuries sustained, the quality of Plaintiff's life will never be the same. Plaintiff is likely to never obtain gainful employment, likely to never be able to financially support himself, and will face a debt of hospital bills in excess of $300,000.

## IV. LEGAL CLAIMS

33. Defendant Unknown Railroad Company acted negligently because the Defendant owed a duty of ordinary care to Plaintiff as a frequent and permissive trespasser of it's rail track in the City of Vandalia; breached that duty of care when it knew or should have known of Plaintiff's presence; and, proximately caused severe and permanent physical, emotional, and financial injury.

34. Defendant Unknown Railroad Company acted negligently because Defendant owed a duty to Plaintiff to refrain from wantonly and [or] willfully injuring him, and to use reasonable care to avoid injury to him after he was discovered to be in peril. Defendant breached that duty when it displayed a reckless disregard for the safety of Plaintiff when it knew, or should have known that pedestrians were in the particular area, had no obstructions that would have prevented his ability to know of Plaintiff's presence, and knowingly operated a train at a location with an inoperable and defective warning device system. Defendant's actions proximately caused severe and permanent physical, emotional, and financial injury.

35. Defendant City of Vandalia acted negligently because the Defendant owed a duty of care to Plaintiff as a pedestrian in the City of Vandalia; breached that duty when it knew or should have known of the dangers posed to the public from the existence of an inoperable and defective warning device system at it's public crossroad; and, contributed to and proximately caused severe permanent physical, emotional, and financial injury.

36. Defendant Mayor of Vandalia, Illinois, acted negligently because the Defendant owed a duty of care to Plaintiff as a pedestrian in the City of Vandalia; breached that duty by failing to implement or otherwise oversee existing policies pertaining to the maintenance and safety of the public roads including the observation and reporting of inoperable warning device systems; and contributed to and proximately caused physical, emotional, and financial injury to Plaintiff.

37. The Defendants collectively violated Plaintiff's Constitutional Rights guaranteed under the 8th and 14th Amendments of the United States Constitution when Plaintiff was willfully and wantonly injured and failed to maintain a fair process of review for the repair and management of warning device systems and safety of public thoroughfares.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the court enter the following judgment:

38. Granting Plaintiff a declaration that the acts and omissions described herein by the Defendants consitutes negligence under Illinois law.

39. Granting Plaintiff a declaration that the acts and omissions described herein by the Defendants violated the 8th and 14th Amendments of the United States Constitution.

40. Enter a permanent injunction ordering the Defendants to maintain operable device warning systems in the region to allow pedestrians warning of on-coming trains.

41. Award compensatory damages for Plaintiff's hospital bills, subsequent follow-up treatments, and loss of wages since being struck and for the remainder of his life in the amount of one million dollars.

42. Award punitive damages for Plaintiff in excess of four million dollars.

43. Plaintiff also demands a trial by jury.

44. Plaintiff also seeks recovery of the costs of this action in accordance with 42 U.S.C. § 1988.

45 Any other such relief this court deems just, proper, and equitable.

Dated: Oct 19 2017

Respectfully submitted,

Carl Sprague
No. S08542
Danville Correctional Center
3820 E. Main St.
Danville, Illinois 61834-5796

11

## VERIFICATION

I, Carl Sprague, pro-se, have read the foregoing complaint and hereby verify that the matters alleged therein are true and correct except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at Danville, Illinois on ___Oct 19 2017___
(date)

x _____
Carl Sprague



- Attachment -